**FILED**
**Nov 07, 2025**
**07:00 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | |
|---|---|
| **CLARENCE MITCHELL, JR.,** | ) **Docket No. 2025-30-0595** |
| **Employee,** | ) |
| **v.** | ) **State File No. 5981-2024** |
| **KNOXVILLE AREA TRANSIT,** | ) |
| **Employer.** | ) **Judge Lisa A. Lowe** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

Clarence Mitchell suffered work-related left shoulder, wrist, and back injuries. At an Expedited Hearing, he sought additional temporary disability benefits. Knoxville Area Transit (KAT) denied his request because he failed to follow its transitional work program. However, the Court holds that Mr. Mitchell would likely prevail at a hearing on the merits on the transitional work issue and grants his request.

### History of Claim

Mr. Mitchell worked as a bus driver for KAT. On January 23, 2024, he slipped on black ice while walking to his bus, hurting his left shoulder, wrist, and back. KAT accepted the claim.

Mr. Mitchell first treated with Dr. Paul Johnson for his back. Dr. Johnson offered surgery; however, Mr. Mitchell declined. He underwent therapy and injections and took medications. Dr. Johnson placed him at maximum medical improvement on August 7, 2024.

Dr. Johnson then retired, and Dr. Luke Madigan took over Mr. Mitchell's back treatment. Mr. Mitchell testified that his pain continued during the gap between the two doctors. Dr. Madigan also recommended surgery, but Mr. Mitchell again declined. He placed Mr. Mitchell at maximum medical improvement on August 12, 2025.

For his left shoulder, Mr. Mitchell treated with Dr. Michael Casey. From February to April 2024, Dr. Casey recommended medication and physical therapy, and he assigned

1

restrictions. Ultimately Dr. Casey performed surgery on October 17. On October 28, Dr. Casey recommended physical therapy and assigned a restriction of "no use of injured arm."

Mr. Mitchell, who worked for KAT for 14 years, testified KAT did not accommodate light-duty restrictions, so if a worker were assigned light duty, they would be sent home. However, at the end of January 2024, KAT implemented a new transitional work program.

Several witnesses testified that employees with any work-related issues look to the contract between KAT and the Union and KAT's Handbook. The contract states in the third paragraph on page three:

> The Company may implement and enforce reasonable rules and regulations; however, at least seven or more calendar days prior to implementation, the Company will submit the same to the Union for review. In addition, the Company will post the rule or regulation in a conspicuous place for each department impacted by the rule and/or regulation prior to the effective date. In the event the rules are not posted in accordance with the Agreement, said rule will not be in effect until the rule is posted in accordance with this Agreement.

Human Resource Specialist Synquis Harris testified that KAT did not post the new transitional work program. She also testified that she did not inform Mr. Mitchell about the new program because he was represented by an attorney at that time.

Additionally, paragraph 23 on page 25 of the contract states:

> Excessive absences – the only absences not subject to the guidelines of the absence policy as defined in work rules are: miss-outs, suspensions, bona fide union business, approved leaves of absence, bereavement leave, military or jury duty, vacations, holidays, FMLA, paid sick leave and occupational illnesses or injury while working at [KAT].

On November 12, KAT sent Mr. Mitchell a letter offering transitional light-duty work with a local nonprofit. He testified he received the letter on November 15. The job description included: sorting, inventory, sizing clothes, stocking in the warehouse, and light cleaning. The letter directed Mr. Mitchell to report to the nonprofit on November 18, and it cautioned that declining light-duty work might affect his right to receive ongoing workers' compensation benefits.

Mr. Mitchell did not believe he could return to light-duty work, as he was only four weeks out from surgery, on pain medications, and attending physical therapy. He testified he was still having a great deal of pain and trouble sleeping, and he felt rushed and

2

intimidated. He said he had never heard of this new policy, and coworkers told him that it had not been posted per the contract. Additionally, no language in the letter said that he could be terminated for failure to appear, and the contract exempts absences from a work injury from the excessive absence policy. So, he did not appear for the transitional work.

KAT terminated Mr. Mitchell on December 12 because he refused to perform the light-duty transitional work that "coincides with KAT's attendance policy." Mr. Mitchell has not worked since.

### Findings of Fact and Conclusions of Law

Mr. Mitchell must show that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

For temporary partial disability benefits, Mr. Mitchell must show that his treating physician returned him to work with restrictions that KAT either could not or would not accommodate. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7, 8 (Dec. 11, 2015).

Employers may use transitional work programs. *See Lasser v Waste Mgmt.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (May 24, 2018). However, the Court must address the reasonableness of KAT's offer of transitional light-duty and the reasonableness of Mr. Mitchell's refusal. The reasonableness of temporary transitional work is dependent upon the facts of each case. *Id.*

Even though KAT had the transitional work program in place in January or February 2024, it did not offer Mr. Mitchell transitional work while he was under restrictions from February to April. The first offer of transitional work came approximately a month after Mr. Mitchell's surgery, while he was still taking pain medications, going to physical therapy, and restricted from using his left arm. The work duties included: sorting, inventory, sizing clothes, stocking in the warehouse, and light cleaning. The Court finds that Mr. Mitchell could not perform those tasks safely or effectively without the use of his left arm and while taking pain medication.

Further, Mr. Mitchell had no knowledge of KAT's new transitional work program before receiving the offer letter. He knew that the contract required any change to be posted, and it was not. He also knew that the contract exempted him from excessive absences since he had a work injury.

Thus, the Court finds that based on his condition and what he knew about the posting requirement and exemption from KAT's absenteeism policy, Mr. Mitchell will likely prove at a hearing on the merits that he was reasonable in declining the transitional light duty.

Mr. Mitchell's average weekly wage was $1,407.94, which results in a compensation rate of $938.67. He last received temporary benefits on November 20, 2024, and Dr. Madigan placed him at maximum medical improvement on August 12, 2025. The Court finds that Mr. Mitchell is likely to prove entitlement to 38 weeks of temporary partial disability benefits, or $35,669.59.

**IT IS, THEREFORE, ORDERED** as follows:

1. Knoxville Area Transit shall provide medical care for Clarence Mitchell's injuries as required by Tennessee Code Annotated section 50-6-204 (2024).

2. Knoxville Area Transit shall pay Mr. Mitchell past temporary partial disability benefits in the amount of $35,669.59.

3. The Court sets a Scheduling Hearing on **January 27, 2026, at 9:30 a.m. Eastern Time**. The parties must call (855) 383-0003 to participate.

4. Unless an interlocutory appeal is filed, compliance must occur by **seven** business days of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED November 7, 2025.**

_Lisa A. Lowe_
**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

4

**APPENDIX**

Exhibits:

1. Rule 72 Declaration of Clarence Mitchell
2. Light Duty Offer/Transitional Work Placement Agreement
3. Personnel Records
4. Phone Record History, November 2024 – January 2025
5. Calendar Entries, May – December 2024
6. Sedgwick Claim File
7. Excerpts of Union Handbook
8. Return to Work Instructions – The Center
9. Medical Records of Premise Health ROI Service Area
10. Medical Records of Tennessee Orthopaedic Alliance
11. Medical Records of Knoxville Orthopedic Clinic
12. Medical Records of University Diagnostic
13. Medical Records of Physician Surgery Center of Knoxville
14. Medical Records of Benchmark Physical Therapy
15. Medical Records of Select Physical Therapy
16. Cora Physical Therapy Functional Capacity Evaluation
17. Results Physiotherapy Functional Capacity Evaluation
18. KAT's return to work policy
19. KAT & Union Meeting Notes March 11,2024
20. KAT's interrogatory responses
21. Letter from Mr. Mitchell's former attorney, Glen Rutherford
22. Statements after Union meeting, October 27 – Late-filed
23. Second Union grievance – Late-filed
24. Entire contract booklet

## CERTIFICATE OF SERVICE

I certify that a copy of the order was sent as shown on November 7, 2025.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| Clarence Mitchell, Jr., Self-Represented Employee | X | X | 2645 E. 5th Avenue Knoxville, TN 37914 mitchell3438@gmail.com |
| Jimmy Johnson Employer's Attorney | | X | jjohnson@knoxvilletn.gov |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*